# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KNAPP MEDICAL CENTER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> SYLVIA MATHEWS BURWELL, in her official capacity as Secretary of the United States Department of Health and Human Services, <br><br> Defendant. | Case No. 1:15-cv-01663 <br> Hon. Rosemary M. Collyer |

**REPLY MEMORANDUM
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

**TABLE OF CONTENTS**

**INTRODUCTION** .................................................................................................................... 1

**ARGUMENT** .......................................................................................................................... 2

**The Court Should Dismiss This Case For Lack Of Subject Matter Jurisdiction Because The Medicare Statute Unambiguously Bars Judicial Review** ........................ 2

    A.    The Text Of The Statutory Bar Precludes Plaintiffs' Claim. .................................. 2

        1.    The Statutory Bar Is Broad And Clear. ........................................................ 2

        2.    Plaintiffs' Interpretation Violates The Canon Against Superfluity In Two Separate Respects. ................................................................................ 4

        3.    Defendant's Interpretation Does Not Yield Absurd Results. ....................... 6

    B.    Other Statutory Bars In The ACA Are Distinguishable. ......................................... 7

    C.    Plaintiffs Invoke Irrelevant And Ambiguous Legislative History. .......................... 8

**CONCLUSION** ...................................................................................................................... 9

# INTRODUCTION

In compliance with Congress's instructions, the Secretary of the Department of Health and Human Services ("HHS") has "establish[ed] and implement[ed] a process" under which physician-owned hospitals may apply for permission to expand capacity without jeopardizing the ability of their physician-owners to refer patients to the hospitals and for the hospitals to receive Medicare payment for services provided to the Medicare patients they referred.  *See* 42 U.S.C. § 1395nn(i)(3)(A)(i).  Doctors' Hospital at Renaissance, Ltd. ("DHR") completed that process and received authorization to expand.  Now that the process has culminated with the decision of the Secretary, "there shall be no administrative or judicial review . . . of the process."  *Id.* § 1395nn(i)(3)(I).  *See generally* ECF No. 10 ("Def.'s Mot.").

In their opposition memorandum, *see* ECF No. 16 ("Pls.' Opp."), Plaintiffs contend that while the statutory bar of jurisdiction precludes a challenge to the establishment of the rules adopted by the Secretary to govern the process, it does not bar a challenge to the application and implementation of the process itself, including the decision of the Secretary with which the process culminates.  Plaintiffs are wrong.  Their interpretation flies in the face of the statutory text, is irreconcilable with case law construing similar provisions, and introduces significant, inexplicable redundancies into the statute.  Because the statutory bar is not nearly as narrow as Plaintiffs imagine, the Court should grant Defendant's motion to dismiss and close this case.

**ARGUMENT**

**The Court Should Dismiss This Case For Lack Of Subject Matter Jurisdiction Because The Medicare Statute Unambiguously Bars Judicial Review**

    **A.**    **The Text Of The Statutory Bar Precludes Plaintiffs' Claim.**

        **1.**    **The Statutory Bar Is Broad And Clear.**

The statutory bar provides that "[t]here shall be no administrative or judicial review under section 1395ff of this title, section 13955oo of this title, or otherwise of the process under this paragraph (including the establishment of such process)." 42 U.S.C. § 1395nn(i)(3)(I). By prohibiting "review" of the process, Congress plainly precluded district courts from determining whether the process was properly carried out, both in general and in any particular case. Seeking to escape the actual language of this provision, Plaintiffs repeatedly describe it as prohibiting only "challenges to" or "attacks on" the process. *See, e.g.* Pls.' Opp. at 4 ("This action does not challenge the 'process' . . . ."); *id.* at 7 ("in the case at bar, there is no attack on 'the process' established by CMS."). But that is not what the statute says: it prohibits *review* of the process. "Review," in this context, is "[c]onsideration, inspection, or reexamination of a subject or thing," and specifically includes "[p]lenary power to direct and instruct an agent or subordinate, including the right to remand, modify, or vacate any action by the agent or subordinate." Black's Law Dictionary 1514 (10th ed.).

By asking this Court to enter "[a]n order vacating or setting aside CMS's grant of DHR's expansion request," Compl. (ECF No. 1) Prayer for Relief ¶ B, Plaintiffs are asking this Court to review the process that culminated in that grant. Several of Plaintiffs' arguments in this case are also fundamentally procedural, including their complaint that CMS failed to properly publicize what they call DHR's "First Application," *id.* ¶ 34, and their complaint that CMS permitted DHR to submit an amended application, *id.* ¶ 35.

*Texas Alliance for Home Care Services v. Sebelius*, 681 F.3d 402 (D.C. Cir. 2012), is the leading D.C. Circuit case addressing how to interpret preclusion provisions of this kind. In *Texas Alliance*, the D.C. Circuit considered a provision stating "that there is to be 'no administrative or judicial review . . . of . . . the awarding of contracts.'" *Id.* at 409 (citing 42 U.S.C. § 1395w-3(b)). The Court held that this language precluded review not only of the award of individual contracts, but also of the "'development and application of appropriate financial standards'" because "financial standards are indispensable to 'the awarding of contracts.'" *Id.* As the Court explained, it "*do[es] not distinguish between an upfront attack on the financial standards by suppliers not yet injured by them and a challenge brought after-the-fact by a frustrated bidder who has been found to be financially ineligible*." *Id.* at 410 (emphasis added).

Here, Plaintiffs concede that the statute bars "an upfront attack" on the regulations governing the expansion exception process, but they believe that they are entitled to bring a "challenge . . . after-the-fact" to the application of those regulations. That is exactly the distinction that the D.C. Circuit refused to countenance in *Texas Alliance*. *See also Fla. Health Scis. Ctr., Inc. v. Sec'y, U.S. Dep't of Health & Human Servs.*, 89 F. Supp. 3d 121, 129 (D.D.C. 2015) ("The case law is clear that efforts to characterize a claim as a review of an agency's procedure or methodology when the claim is, at bottom, an attack on an agency determination that is precluded from review will not forestall the application of the preclusion provision."). While Plaintiffs suggest *Texas Alliance* presents the "opposite scenario" of the situation presented in this case (since Plaintiffs are characterizing their claim as an attack on the determination), *see* Pls.' Opp. at 8 n.1, the bottom line holding of *Texas Alliance* is that it is error to distinguish attacks on the rules from attacks on individual determinations reached when those rules are applied.

3

Defendant has also observed that HHS has interpreted the statutory bar on jurisdiction "to mean that CMS' decision with respect to whether a hospital qualifies for an exception is not reviewable," 76 Fed. Reg. 42,170, 42,353 (Jul. 18, 2011). Plaintiffs respond that an agency's interpretation of a jurisdiction-stripping provision is not eligible for deference under *Chevron v. Natural Res. Def. Council*, 467 U.S. 837, 843 (1984), and Defendant has not suggested otherwise. But while not all agency pronouncements "bind judges to follow them, they certainly may influence courts facing questions the agencies have already answered." *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001); *accord, e.g.*, *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998) ("well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance'" (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-140 (1944))). Here, the agency's interpretation is well-informed and consistent with binding D.C. Circuit precedent, and this Court may properly consider it in interpreting the statute.

### 2. Plaintiffs' Interpretation Violates The Canon Against Superfluity In Two Separate Respects.

In addition to being irreconcilable with the text of the statute, Plaintiffs' cramped interpretation of 42 U.S.C. § 1395nn(i)(3)(I) doubly violates the "cardinal principle of interpretation" requiring a court to "construe a statute 'so that no provision is rendered inoperative or superfluous, void or insignificant.'" *Asiana Airlines v. FAA*, 134 F.3d 393, 398 (D.C. Cir. 1998) (quoting *C.F. Commc'ns Corp. v. FCC*, 128 F.3d 735, 739 (D.C. Cir. 1997)).

*First*, Plaintiffs' interpretation gives no independent meaning to the final phrase: "including the establishment of such process." Plaintiffs suggest that absent the statutory bar, the process "could be attacked as not providing sufficient notice to interested parties or sufficient time to respond, or for having arbitrary standards, or for requiring irrelevant or unduly

4

burdensome supporting materials," or for failing to comply with "'notice and comment' requirements or other requirements under the Administrative Procedure Act or otherwise." Pls.' Opp. at 7; *see also id.* ("Congress simply wanted to prohibit attacks on CMS' ability to establish, and on its use of discretion in establishing, *the procedural rules* by which applicants may seek expansion exceptions."). In other words, Plaintiffs suggest that but for the statutory bar, the regulations setting up the process could be challenged.

The problem with this argument is that every challenge that Plaintiffs are willing to concede would be barred is properly characterized as a challenge to the "establishment" of the process. If the agency issued regulations governing the process that were arbitrary and capricious, or were unfaithful to the underlying statute, or failed to comply with the required procedures, the ensuing challenge would contend that the process was "established" in violation of the Administrative Procedure Act ("APA"). *See generally* 5 U.S.C. § 706(2)(A), (C), (D). Yet the statute makes clear that there is no "review . . . of the process under this paragraph (*including the establishment of such process*)." 42 U.S.C. § 1395nn(i)(3)(I) (emphasis added). Thus, while review of the regulations that establish the process is plainly unavailable, per the final phrase, that cannot be the only thing that is barred. Plaintiffs' theory leaves no independent work for the final parenthetical phrase.

***Second***, Plaintiffs' interpretation renders superfluous the statute's preclusion of administrative, in addition to judicial, review. *See* Pls.' Opp. at 7 (identifying various ways in which "[a] 'process' established by an agency to provide a defined set of procedural rules by which an applicant can request some agency approval typically can be *judicially* challenged" (emphasis added)). Under standard notice-and-comment rulemaking, an agency issues a notice of proposed rulemaking, *see* 5 U.S.C. § 553(b), receives public comments, *id.* § 553(c), and then

issues a final rule.[1] No administrative review is available, though judicial review may be available under the APA. *See* 5 U.S.C. § 702. If Plaintiffs are right that Congress only intended to "prohibit attacks on CMS' ability to establish, and on its use of discretion in establishing, *the procedural rules*," Pls.' Opp. at 7, there would be no need to preclude administrative review because administrative review of regulations establishing the procedural rules would not have been available in the first place.

### 3. Defendant's Interpretation Does Not Yield Absurd Results.

Plaintiffs contend that Defendant's interpretation of the statute yields absurd results because it would preclude judicial review even if the Secretary granted an expansion exception where the applicant was obviously not entitled to it. *See* Pls.' Opp. at 14 ("applicant could literally submit a one-sentence letter (with no supporting documents or evidence) asking for an expansion of its hospital, and there could be no challenge . . . ."). At the outset, it bears noting that Plaintiffs do not contend that the agency granted an application of that kind in this case and point to no case in which the agency has ever done so.

In any event, while Congress certainly did not intend the agency to grant expansion exceptions that fail to meet the statutory requirements, Congress rationally believed that the agency could be trusted to fairly administer the regulatory regime absent judicial review. *Cf., e.g.*, *Cardiosom, LLC v. United States*, 656 F.3d 1322, 1326 (Fed. Cir. 2011) ("The purpose of withholding judicial review in these instances is to insulate these management decisions by the Medicare Administration from the potential of inordinate delays that would transpire if every such management decision were open to an upfront challenge by some disappointed group.").

---

[1] Because the Stark Law does not specifically instruct the Secretary to establish the expansion-exception process by regulations issued "on the record after opportunity for an agency hearing," the agency was permitted to issue these regulations through standard notice-and-comment rulemaking under 5 U.S.C. § 553, rather than formal rulemaking governed by 5 U.S.C. §§ 556-557. *See United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224 (1973).

Plaintiffs' absurdity argument — which is not supported by any authority — presumes that the agency would take advantage of the lack of judicial review to flout the statutory directives. That assumption, however, is irreconcilable with the Court's obligation to "presume an agency acts in good faith." *Comcast Corp. v. FCC*, 526 F.3d 763, 769 n.2 (D.C. Cir. 2008). At bottom, Plaintiffs are really saying that any statute that shields agency action from judicial review is absurd, since agencies cannot be trusted to fairly administer the law, but Plaintiffs have no authority for that proposition and in reality these provisions are regularly enforced. *See* Def.'s Mot. at 5-9 & n.2 (collecting copious case law).

### B.   Other Statutory Bars In The ACA Are Distinguishable.

Plaintiffs contend that the Affordable Care Act ("ACA") "includes several limitations on judicial review that clearly prohibit judicial review of determinations resulting from the process, methodology, or other system established in the legislation." Pls.' Opp. at 9. They reason that Congress's failure to specifically indicate that it was precluding review of determinations reached by the process here means that Congress intended such determinations to be reviewable. *See id.* at 9-11 (citing 42 U.S.C. § 1395w-4(n)(9)(G); *id.* § 1395w-4(p)(10); *id.* § 1315a(d)(2); *id.* § 1395ww(h)(7)(e).

Plaintiffs' comparisons shed no light on the language at issue here because in none of the provisions to which Plaintiffs point did Congress preclude review of an entire process that culminates in a determination. Thus, 42 U.S.C. § 1395w-4(n)(9)(G) bars review of the "establishment" of a particular methodology, as well as the "determination" of an *input* to that methodology (specifically, the "determination of an episode of care") but does not broadly bar review of the entire methodology itself. 42 U.S.C. § 1395w-4(p)(10)(G) provides that there is no review of "the determination of costs under paragraph (8)(A)," but paragraph (8)(A) does not provide a "process" for determining costs, and paragraph (10)(G) does not bar review of a

7

process.  42 U.S.C. § 1315a(d)(2)(D) bars review of certain "determinations regarding budget neutrality under subsection (b)(3)," but subsection (b)(3) does not require the Secretary to establish a process for determining budget neutrality, and the preclusion provision does not bar review of a process.  Finally, 42 U.S.C. § 1395ww(h)(7)(E) bars review of various "determinations" made in that statutory section without providing more broadly that the entire process that produces those determinations is unreviewable.

Here, Congress has directed the Secretary to establish and implement a process for reaching a determination, and it has broadly said that there is no administrative or judicial review of that process.  Given the structure of this statutory bar, it would have been redundant to further provide that there is no review of the determination reached pursuant to the process and with which the process culminates.  The examples to which Plaintiffs point are structured differently and shed no light on the meaning of the provision at issue here.

      **C.**     **Plaintiffs Invoke Irrelevant And Ambiguous Legislative History.**

Finally, Plaintiffs turn to legislative history, arguing that "[a]n early version of the bill[]" that became the ACA specifically barred challenges to "any determination made under such process."  Pls.' Opp. at 12 (citing America's Affordable Health Choices Act of 2009, H.R. 3200, 111th Cong.) (emphasis omitted).

Plaintiffs' reliance on legislative history fails in at least two respects.  First, H.R. 3200 was not an "early version" of the ACA, but rather a separate legislative proposal made months earlier.  H.R. 3200 was introduced in the House of Representatives on July 14, 2009, and it died without ever receiving a vote on the floor.  Notwithstanding the House's early efforts at crafting health-reform legislation, "[a]s it would turn out, the Senate would take the lead in shaping the form the ACA was to take."  John Cannan, A Legislative History of the Affordable Care Act: How Legislative Procedure Shapes Legislative History, 105 L. Lib. J. 131, 143 (2013).  The bill

that became the ACA originated as an unrelated tax measure in the House, H.R. 3590. The Senate then amended H.R. 3590 to substitute the text of the ACA. 155 Cong. Rec. at 33,108 (December 23, 2009). In other words, the substance of the ACA was written in the Senate, not the House. The language to which Plaintiffs point was not amended out of the ACA; the ACA was separate legislation. Plaintiffs' attempt to infer meaning from a "separate statute with a separate legislative history," *United States v. Bowers*, 432 F.3d 518, 523 (3d Cir. 2005), fails.

Second, even if it were assumed that the Senate consciously excised this specific phrase from the earlier House bill, Plaintiffs point to no indication in the legislative history of why the Senate did so. Plaintiffs simply assume that the Senate meant to narrow the scope of the preclusion provision, but the Senate might equally have thought that this language was redundant, since review of the process is broadly precluded. Plaintiffs identify no reason to interpret this ambiguous history in their favor, and in light of the Supreme Court's recognition that "Congress wrote key parts of the Act behind closed doors, rather than through 'the traditional legislative process,'" *King v. Burwell*, 135 S. Ct. 2480, 2492 (2015), Plaintiffs' attempt to use legislative history to overcome the clear statutory text is particularly inappropriate.

## CONCLUSION

Defendant respectfully requests that her motion to dismiss be granted.

Dated: March 14, 2016					Respectfully submitted,


							BENJAMIN C. MIZER
							Principal Deputy Assistant Attorney General

							CHANNING D. PHILLIPS
							United States Attorney

							SHEILA LIEBER
							Deputy Director, Federal Programs Branch

							/s/ *Steven A. Myers*

Steven A. Myers (NY Bar No. 4823043)
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
Telephone:  (202) 305-8648
Fax:  (202) 616-8460
Email:  Steven.A.Myers@usdoj.gov

Mailing Address:
Post Office Box 883
Washington, DC 20044

Courier Address:
20 Massachusetts Ave., NW Rm. 7334
Washington, DC 20001

*Counsel for Defendant*