UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KNAPP MEDICAL CENTER, *et al.* | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 15-cv-1663 (RMC) |
| SYLVIA MATTHEWS BURWELL, in her official capacity as Secretary of the Department of Health & Human Services | ) ) ) ) | |
| Defendant. | ) ) ) | |

## OPINION

Plaintiff hospitals challenge a final decision by the Department of Health and Human Services to approve the expansion of a physician-owned hospital in Hidalgo County, Texas. The Court will not reach the merits because Congress has specifically foreclosed judicial review of these decisions. Defendants' motions to dismiss will be granted and the case dismissed.

## I. FACTS

Plaintiffs Knapp Medical Center, McAllen Hospitals, L.P., and Cornerstone Regional Hospital, L.P. (Plaintiffs) are hospitals in Hidalgo County, Texas. Compl. [Dkt. 4] ¶¶ 2-4. They compete with Doctors Hospital at Renaissance, Ltd. (DHR), also in Hidalgo County. *See id.* The County is located in the Rio Grande Valley in Texas, across the Rio Grande River from Mexico. DHR is located in Edinburg, Texas in the middle of the county. *See* DHR Mot. to Dismiss (DHR Mot.) [Dkt. 17] at 5. Hidalgo County was designated a "medically underserved area" by the Department of Health and Human Services (HHS) in 1994. U.S. Dep't

1

of Health & Human Services, Health Resources and Services Administration Data Warehouse (6/20/2016), http://datawarehouse.hrsa.gov/tools/analyzers/MuaSearchResults.aspx.[1]

DHR is an acute care hospital with a Level III trauma facility.  There are no Level I or Level II trauma centers in the area so that patients with greater needs must be transported long distances to such centers.  DHR Mot. at 1.  DHR is owned by the physicians who practice there, which presents particular issues under the Medicare Act, 42 U.S.C. § 1395 *et seq.*  As relevant here, a physician-owned hospital must obtain permission from HHS before the hospital can expand.  Compl. ¶¶ 15-16.  This requirement arises from the Stark Law, codified at 42 U.S.C. § 1395nn, which generally forbids referrals by physicians to care facilities in which the physicians have a financial interest.[2]  Obviously, when physicians own the hospital, self-referral is an immediate issue; the Stark Law allows a limited exception in such circumstances, 42 U.S.C. § 1395nn(d)(3), provided that the hospital meets the requirements of § 1395nn(i)(1).

As amended by the Affordable Care Act of 2010, the Stark Law also closely oversees whether and when physician-owned hospitals may expand.  *Id.* § 1395nn(i)(3).[3]  It imposes no restrictions on the expansion of non-physician owned hospitals.  With permission,

---

[1] This Court appropriately takes judicial notice of the publicly available information on HHS's website.  *See Linchpins of Liberty v. United States*, 71 F. Supp. 3d 236, 242 (D.D.C. 2014) ("among the documents subject to judicial notice on a motion to dismiss are public records") (citation and internal quotations omitted).

[2] The purpose of the Stark Law is to guard against physician referral to a care provider in which the physician has a financial interest so as to prevent unnecessary referrals and the income they produce to the physician.  The law is named after Representative Pete Stark of California who sponsored the original bill in 1989.  *See* Omnibus Budget Reconciliation Act of 1989 (OBRA 1989), P.L. 101-239.  The scope of the Stark Law prohibitions has been expanded multiple times since 1989.

[3] Subsection (i) was added by the Patient Protection and Affordable Care Act, Pub. L. 111-148, § 6001(a)(3), 124 Stat. 119, 685-89 (2010) (ACA).

physician-owned hospitals are permitted to expand up to 100%. *Id.* § 1395nn(i)(3)(C)(ii).  HHS has established a process and regulations under which physician-owned hospitals may apply for authority to expand.  *Id.* §§ 1395nn(i)(3)(A)(i), (iv); 42 C.F.R. § 411.362(c).

DHR filed an application with HHS on March 20, 2014, seeking to expand by 100% to enable DHR to establish the infrastructure needed to support a Level 1 trauma center.  *See* Compl. ¶ 24; DHR Mot. at 1.  That application was never acted upon because HHS was in the middle of formal rulemaking on the issue.  Compl. ¶ 24.  HHS published an amended Final Rule on November 10, 2014.  79 Fed. Reg. 66,770, 66,987-97 (Nov. 10, 2014).  Among other things, the new Rule expanded the universe of evidence that could be offered by applicant physician-owned hospitals that want to expand.  The Final Rule went into effect on January 1, 2015.  Compl. ¶ 25.

DHR filed an "amended and restated" application on January 2, 2015.  *Id.* ¶ 26.  The application was published in the Federal Register on May 8, 2015 and made available on an HHS website.  *Id.* ¶ 27.  Interested parties filed a total of 21 comments on DHR's application.  *Id.* ¶ 28.  Several assailed DHR's eligibility under the statutory or regulatory criteria.  After DHR's rebuttal was publicized, another round of public comments was received.  *Id.* ¶¶ 29-30.

HHS approved DHR's request to expand the hospital on September 11, 2015.  *Id.* ¶ 31.  Notice was published in the Federal Register on September 17, 2015.  80 Fed. Reg. 55,851 (Sep. 17, 2015).  After considering the information tendered by DHR and the public commenters, HHS made the following predicate findings:

- DHR is located in Hidalgo County, which has a percentage increase in population that is at least 150 percent of the percentage increase in Texas' population during the most recent 5-year period for which data was available as of the date that DHR submitted its request;

- DHR has an annual percentage of total inpatient admissions under Medicaid that is equal to or greater than the average percentage with respect to such admissions for all hospitals located in Hidalgo County during the most recent 12-month period for which data are available as of the date that DHR submitted its request;

- DHR certified and provided satisfactory documentation that it does not discriminate against beneficiaries of Federal health care programs and does not permit physicians practicing at the hospital to discriminate against such beneficiaries;

- DHR is located in Texas, which has an average bed capacity that is less than the national average bed capacity during the most recent fiscal year for which HCRIS,[4] as of the date that the hospital submitted its request, contained data from a sufficient number of hospitals to determine Texas' average bed capacity and the national average bed capacity; and

- DHR has an average bed occupancy rate that is greater than the average bed occupancy rate in Texas during the most recent fiscal year for which HCRIS, as of the date that DHR submitted its request, contained data from a sufficient number of hospitals to determine its average bed occupancy rate and Texas' average bed occupancy rate.

*Id.* at 55,853. Based on these findings, HHS concluded "DHR satisfied the Medicaid inpatient admissions, bed capacity and bed occupancy criteria" under the relevant statutory and regulatory scheme. *Id.* It granted permission for DHS to double in size, adding a total of 551 operating rooms, procedure rooms, and beds. *Id.*

Plaintiffs filed suit in this Court on October 12, 2015. Compl. [Dkt. 1].[5] The sole count alleges that HHS's decision was contrary to the statutory criteria governing the application

---

[4] HCRIS, Healthcare Cost Report Information System, contains annual reports submitted by Medicare Administrative Contractors. *See* CMS.gov Centers for Medicare & Medicaid Services, *Cost Reports* (April 21, 2016), www.cms.gov/Research-Statistics-Data-and-Systems/Downloadable-Public-Use-Files/Cost-Reports/. The reports include facility-level data on utilization, costs, charges, Medicare payments, and other financial information.

[5] Plaintiffs filed a "corrected" complaint the next day, Dkt. 4, which the Court will treat as the operative complaint. All other cites to "Compl." reference Dkt. 4.

process. Compl. ¶¶ 32-42. First, Plaintiffs allege that HHS's failure to publish DHR's first application deprived the public of its right to comment on it. *See id.* ¶ 34 (citing 42 U.S.C. § 1395nn(i)(3)(A)(ii)). Second, Plaintiffs allege that DHR violated the "two-year rule" in § 1395nn(i)(3)(B) by applying to expand more than once within a two-year period. Compl. ¶ 35. Third, Plaintiffs allege that DHR cannot qualify as a "high Medicaid Facility" because it "is not the hospital with the highest annual percent of inpatient admissions under Medicaid in Hidalgo County for any year since 2007" and because it "permits physicians practicing at the hospital to discriminate against Medicaid beneficiaries." *Id.* ¶ 36 (citing 42 U.S.C. §§ 1395nn(i)(3)(F)(ii), (iii)). Fourth, Plaintiffs allege that DHR cannot qualify as an "applicable hospital" because it "is not located in a county with a percentage increase in population that is 150% of the percentage increase of the population of the State in which the county is located"; because it "does not have a higher annual percent of inpatient admissions under Medicaid than the average annual percent of inpatient admissions for hospitals in Hidalgo County"; and because it "permits physicians practicing at the hospital to discriminate against Medicaid beneficiaries." Compl. ¶ 37 (citing 42 U.S.C. §§ 1395nn(i)(3)(E)(i), (ii), (iii)).

Plaintiffs assert jurisdiction under three statutes: the Administrative Procedure Act, 5 U.S.C. § 706(2) (APA); the Mandamus Act, 28 U.S.C. § 1361; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. DHR has intervened as a Defendant and it and HHS filed motions to dismiss. They both argue that the Court lacks jurisdiction under these or any other statute and DHR argues that Plaintiffs lack standing to sue Secretary Sylvia Matthews Burwell of HHS. *See* HHS Mot. to Dismiss [Dkt. 10] (Mot.); DHR Mot. Plaintiffs oppose. *See* Plaintiffs' Opposition [Dkt. 16] (Opp'n). The motions are ripe for resolution.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint, or any portion thereof, for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is both a statutory requirement and an Article III requirement.  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).  The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists.  *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (noting that federal courts are courts of limited jurisdiction and "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction") (internal citations omitted).  However, there is also a "'strong presumption that Congress intends judicial review of administrative action,'" which "can only be overcome by a 'clear and convincing evidence' that Congress intended to preclude the suit."  *Amgen, Inc. v. Smith*, 357 F.3d 103, 111 (D.C. Cir. 2004) (citing *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986) and *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967)).

When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be reasonably derived from the facts alleged.  *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004).  Nevertheless, "the Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions."  *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).  A court may consider materials outside the pleadings to determine its jurisdiction.  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005); *Coal. for Underground Expansion v.*

*Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).  A court has "broad discretion to consider relevant and competent evidence" to resolve factual issues raised by a Rule 12(b)(1) motion.  *Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 873 F. Supp. 2d 363, 368 (D.D.C. 2012) (citing 5B Charles Wright & Arthur Miller, Fed. Prac. & Pro., Civil § 1350 (3d ed. 2004)); *see also Macharia v. United States*, 238 F. Supp. 2d 13, 20-21 (D.D.C. 2002), *aff'd*, 334 F.3d 61 (2003) (in reviewing a factual challenge to the truthfulness of the allegations in a complaint, a court may examine testimony and affidavits).  In these circumstances, consideration of documents outside the pleadings does not convert the motion to dismiss into one for summary judgment.  *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 21 (D.D.C. 2003).

### III.  ANALYSIS

The lower federal courts are creatures of Congress.  Just as Congress "from time to time ordain[s] and establish[es]" such courts under Article III, Section 1 of the Constitution, Congress likewise confers their jurisdiction.  *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 492 (D.C. Cir. 1984) ("A federal court's subject-matter jurisdiction, constitutionally limited by article III, extends only so far as Congress provides by statute.").  When it comes to judicial review of agency action, that jurisdiction may be as wide or as narrow as Congress chooses.[6]  Since Congress expressly foreclosed judicial review in this case, the Court must dismiss Plaintiffs' challenge to HHS's final decision.

---

[6] The presumption of reviewability "'may be overcome by,' *inter alia*, 'specific language or specific legislative history that is a reliable indicator of congressional intent,' or a specific congressional intent to preclude judicial review that is '"fairly discernible" in the detail of the legislative scheme.'" *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 673 (1986) (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349-51 (1984)); *see also Tex. Alliance for Home Care Servs. v. Sebelius*, 681 F.3d 402, 408 (D.C. Cir. 2012); *Amgen, Inc. v. Smith*, 357 F.3d 103, 112 (D.C. Cir. 2004); *Am. Soc'y of Dermatology v. Shalala*, 116 F.3d 941 (D.C. Cir. 1997).

There is no doubt that Congress has insulated HHS decisions approving expansion of physician-owned hospitals from review. When the application process was added to Medicare by the Affordable Care Act, the same provision in the ACA added:

> (I) Limitation on review
>
> There shall be no administrative or judicial review under section 1395ff of this title, section 1395*oo* of this title, or otherwise of the process under this paragraph (including the establishment of such process). [7]

42 U.S.C. § 1395nn(i)(3)(I). This language "clearly and convincingly" reflects a congressional intent to preclude review of the process itself and decisions resulting from the process. Not only does the provision apply to substantive and procedural objections, but review is foreclosed under Medicare "or otherwise," under other statutes. *Id.* In short, there is no judicial review of these decisions.

Plaintiffs would read § 1395nn(i)(3)(I) narrowly. They disclaim any "challenge to the process or the establishment of the process for the expansion exceptions that are defined by Congress." Compl. ¶ 11. Rather, they challenge HHS's "faulty and arbitrary application of the congressionally-mandated criteria and its own rules to the DHR expansion application." *Id.* In this, they err.

The consideration of Medicare's statutory criteria, when HHS decides whether to approve an expansion, is part of the "process." Plaintiffs cannot survive a motion to dismiss by attempting to separate the process itself from a decision arrived at through that process. The D.C. Circuit has addressed a similar contention in *Texas Alliance for Home Care Servs. v.*

---

[7] Section 1395ff addresses determinations of benefits to individuals and appeals therefrom. Section 1395*oo* addresses the Provider Reimbursement Review Board's authority over reimbursement challenges raised by service providers, *i.e.*, doctors, hospitals and others, and judicial appeals therefrom.

*Sebelius*, 681 F.3d 402 (D.C. Cir. 2012), determining that 42 U.S.C. § 1395w-3(b) prohibited review of the development and application of appropriate financial standards used in awarding contracts *and* the actual contract award itself. Section 1395w-3(b)(11) states "[t]here shall be no administrative or judicial review under section 1395ff of this title, section 1395*oo* of this title, or otherwise, of . . . (B) the awarding of contracts under this section." *Texas Alliance* found that the "financial standards are indispensable to 'the awarding of contracts'" and interpreted the statute to prohibit review of those standards. 681 F.3d at 409. The Circuit refused to draw a distinction between the actual award of a contract and the financial standards which are part of the decision whether or not to award a contract. *Id*. This Court similarly refuses to separate the process for approving expansion of physician-owned hospitals from a decision arrived at under that process.

The *Texas Alliance* plaintiffs' argument that they sought review of the financial standards, and not the award of a contract, is comparable to the Plaintiffs' argument here that they are challenging the application of the process, but not the process itself. The D.C. Circuit held that the financial standards were inseparable from the contract award because the financial standards "determine[d] whether or not a contract may be awarded to a bidder." *Id*. The similarity in language between the provision at issue in *Texas Alliance* and § 1395nn(i)(3)(I) is immediately apparent. This Court's interpretation of that language must align with *Texas Alliance*. Any other result is untenable.

Plaintiffs' claims — that HHS (1) erred by failing to publish DHR's original application in the public record, (2) failed to bar DHR's amended application as filed too soon, and (3) acted arbitrarily in assessing DHR's compliance with the statutory requirements — are plainly attacks on HHS's application of the process established in 42 U.S.C. § 1395nn(i)(3)(A)(i) and, thus, barred from judicial review.

9

Attempting to avoid this result, Plaintiffs argue that without judicial review, HHS could easily exceed its authority to grant requests by physician-owned hospitals to expand under 42 U.S.C. § 1395nn(i)(1)(B). Plaintiffs' concern is unwarranted. Judicial review of agency decisions is permitted when an agency acts *ultra vires*, or outside the bounds of its authority. *See Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 189-90 (D.C. Cir. 2006) (quoting *Dart v. United States,* 848 F.2d 217, 221 (D.C. Cir. 1988) and *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003)) (finding "'judicial review is available when an agency acts *ultra vires,*' even if a statutory cause of action is lacking"). This non-statutory review of agency action, however, is "intended to be of extremely limited scope." *Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988).

Notably, Plaintiffs have not alleged or argued that HHS acted beyond its statutory authority when it granted DHR's request for expansion, but instead worry about the possibility of such action at an unspecified time in the future. Their worry does not constitute a case or controversy. *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20 (1998) (quoting *Coleman v. Miller*, 307 U.S. 433, 460 (1939) (Frankfurter, J., dissenting)) ("[C]ourts will not 'pass upon . . . abstract, intellectual problems,' but adjudicate 'concrete, living contest[s]' between adversaries."); *Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945) (controversy must be "definite and concrete, not hypothetical or abstract"). The Court will decline to review HHS's application of the process of granting expansion rights to DHR as clearly prohibited by § 1395nn(i)(3)(I).

## IV.  CONCLUSION

Defendant HHS's Motion to Dismiss [Dkt. 10] will be granted, Intervener Defendant DHR's Motion to Dismiss [Dkt. 17] will be granted, and the case dismissed.  A memorializing Order accompanies this Opinion.

Date: June 28, 2016

/s/
ROSEMARY M. COLLYER
United States District Judge